UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------------X

CAROL LINELL and CECELIA EDELMANN,

                                  Plaintiffs,

                            against -

NEW YORK CITY DEPARTMENT OF EDUCATION;
KAYE HOULIHAN, in her Official and Individual Capacity,
THOMAS OBERLE, in his Official and Individual Capacity, and
CHRISTINE CICCARONE, in her Official and Individual Capacity,

                                  Defendants.

-------------------------------------------------------------------------------------X

No. 15-CV-5085
(CBA)(MDG)

**VERIFIED**
**AMENDED**
**COMPLAINT**
*Jury Trial Demanded*

    Plaintiffs, CAROL LINELL and CECELIA EDELMANN, by and through their attorneys, THE LAW OFFICE OF STEVEN A. MORELLI, P.C., respectfully allege, upon knowledge as to themselves and their own actions, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1.  This is an employment discrimination and civil rights action against Defendants New

    York City Department of Education and the above named individual Defendants:

    a) on behalf of both Plaintiffs, for age discrimination in violation of the Equal

    Protection Clause of the United States Constitution pursuant to 42 U.S.C. § 1983, and the

    New York State Human Rights Law (N.Y. Exec. Law § 290 *et seq.*)("NYSHRL") and the

    New York City Human Rights Law (N.Y. City Admin. Code § 8-*101 et*

    *seq.*)("NYCHRL");

b) for Plaintiff Cecelia Edelmann only, for gender discrimination in violation of the Equal Protection Clause of the United States Constitution pursuant to 42 U.S.C. § 1983 and for disability discrimination under the Americans with Disabilities Act ("the ADA"), 42 U.S.C. § 12131 *et seq.*, and for both gender and disability discrimination, under the New York State Human Rights Law (N.Y. Exec. Law §§ 290 *et seq.*)("NYSHRL") and the New York City Human Rights Law (N.Y. City Admin. Code § 8-101 et seq.)("NYCHRL");

c) for Plaintiff Carol Linnell only, for retaliation in violation of the First Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983, and for common law claims of defamation, negligence, negligent training and negligent supervision.

2. Plaintiffs Cecelia Edelmann ("Cecelia") and Carol Linnell ("Carol"), together, have 50 years of combined public high school teaching experience. Cecelia, age 52, was an art teacher for 20 years, and Carol, age 56, was a special education teacher for 30 years. Both were tenured teachers at Fort Hamilton High School ("the School"), in Brooklyn, with consistently positive evaluations, and both would have continued teaching for another ten years or more, had it not been for the campaign of discrimination, launched against them, in 2012-2014, by the new administration of the School, on the basis of their age. In addition to outright acts of disparate treatment, the School's discriminatory policy on age was explicitly stated at staff meetings by Defendant Christine Ciccarone ("Ciccarone"), Assistant Principal, who repeatedly expressed her intent to higher younger teachers.

3. Moreover, Cecelia was singled out for harassment on the basis of her sex and physical disability by Defendant Thomas Oberle ("Oberle"), Assistant Principal, who targeted her

2

with disparaging statements about her "boob job" and "push-up bra" and inability to bear children, which drove her to the point of a breakdown and to the development of Post-Traumatic Stress Disorder.

4. Carol was additionally singled out for unwarranted discipline, as well as retaliation, for pursuing a grievance with her union for the discipline and for her independent communications with the College Board, on its PSAT testing policies for students and proctors, in violation of the First Amendment. The School administration also targeted Carol with false, written accusations of violations of educational procedures starting in November 2013, after which she became a "hot topic" at the School, and again in September 2014.

5. Although Cecelia and Carol complained about their job conditions to Defendant Kaye Houlihan ("Houlihan"), Principal, and Defendant New York City Department of Education ("DOE"), their complaints fell on deaf ears, and no investigation was ever conducted.

6. By October, 2014, finding their working conditions intolerable due to the School's unlawful discrimination and retaliation, Carol and Cecelia found they had no choice but to resign, and so, they were constructively discharged.

7. On information and belief, between 2012 and 2014, at least four other teachers over the age of 40 left the school due to age discrimination between 2012 and 2014, and approximately 30 teachers below the age of 40 were hired.

8. Plaintiffs now bring this action to seek redress for the injuries they have suffered as a result of Defendants' violations of federal and state laws.

## JURISDICTION AND VENUE

9. This Court has original subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and §§ 1343(3) and (4), as this action seeks redress for the violation of Plaintiffs' constitutional and civil rights.

10. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because those claims are so related to the federal claims that they form a part of the same case or controversy between Plaintiffs and Defendants.

11. Venue is proper in this case pursuant to 28 U.S.C. § 1391(b)(2), because the Eastern District of New York is the judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

12. All conditions precedent to filing suit have been fulfilled. On or about December 2, 2014 Plaintiffs served separate Notices of Claim upon all Defendants. On or about March 23, 2015, Defendants examined Plaintiff Cecilia Edelmann under oath pursuant to Section 50(h) of the General Municipal Law. Defendants did not notice nor examine Plaintiff Carol Linell pursuant to Section 50(h) of the General Municipal Law, and more than 90 days have passed since service of Plaintiff Linell's Notice of Claim. Further, the present action is being commenced within one year and ninety days of the subject occurrence.

13. All administrative exhaustion requirements have been met. Plaintiff Cecilia Edelmann filed a timely Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on or about March 18, 2015, and received a Notice of Right to Sue letter on November 6, 2015.

14. Plaintiff Carol Linell filed a timely Charge of Discrimination with the EEOC on or about March 18, 2015, and received a Notice of Right to Sue letter on October 30, 2015.

4

15. Plaintiffs will have commenced this action within 90 days of their receipt of their right to sue letters.

## PARTIES

16. Plaintiff CAROL LINELL ("Carol") is a 56-year old female, who is a resident and domiciliary of Richmond County, New York. At all times relevant, Plaintiff Linell was an "employee" of Defendants as that term is defined by the NYSHRL and the NYCHRL.

17. Plaintiff CECELIA EDELMANN ("Cecelia") is a 52-year old female, who is a resident and domiciliary of Kings County, New York. At all times relevant, Plaintiff Edelmann was an "employee" of Defendants as that term is defined by the ADA, the NYSHRL and the NYCHRL.

18. Defendant NEW YORK CITY DEPARTMENT OF EDUCATION ("DOE") is a municipal corporation incorporated under the laws of the State of New York, which is in charge of all public schools in the City of New York. Its headquarters are located at 52 Chambers Street, New York, NY 10007. At all times relevant to this complaint, Defendant DOE was Plaintiffs' "employer" as that term is defined by the ADA, the NYSHRL and the NYCHRL.

19. Defendant KAYE HOULIHAN ("Houlihan") at all times hereinafter mentioned, was and still is the Interim Acting and later appointed Principal of Fort Hamilton High School located at 8301 Shore Road, Brooklyn, New York 11209. At all times relevant to this complaint, Defendant Houlihan was Plaintiffs' supervisor, and acted under color of state law and in the scope of her employment with the DOE. Houlihan is being sued in her individual capacity under 42 U.S.C. § 1983.

5

20. Defendant THOMAS OBERLE ("Oberle") at all times hereinafter mentioned, was and still is the Assistant Principal of Fort Hamilton High School located at 8301 Shore Road, Brooklyn, New York 11209. At all times relevant to this complaint, Defendant Oberle was Plaintiffs' supervisor, and acted under color of state law and in the scope of his employment with the DOE. Oberle is being sued in his individual capacity under 42 U.S.C. § 1983.

21. Defendant CHRISTINE CICCARONE, ("Ciccarone") at all times hereinafter mentioned, was and still is the interim acting and later appointed Assistant Principal of Fort Hamilton High School located at 8301 Shore Road, Brooklyn, New York 11209. At all times relevant to this complaint, Defendant Ciccarone was Plaintiffs' supervisor, and acted under color of state law and in the scope of her employment with the DOE. Ciccarone is being sued in her individual capacity under 42 U.S.C. § 1983.

22. As set forth below, the individually named Defendants endorsed and directly participated in the discriminatory conduct against the Plaintiffs. Accordingly, the individually named Defendants aided and abetted the discriminatory conduct against Plaintiffs.

## FACTUAL ALLEGATIONS

### BACKGROUND

## *The School Administration*

23. Fort Hamilton High School ("the School") is a public high school located in Brooklyn, New York, under the authority of Defendant, the New York City Department of Education ("the DOE").

24. During the 2012-2013 academic school year, Defendant DOE hired Defendant Kaye Houlihan ("Houlihan") as the School's new Principal. Accordingly, Defendant Houlihan was Plaintiffs' supervisor.

25. Upon information and belief, Defendant Houlihan is younger than Plaintiffs.

26. Defendants Thomas Oberle ("Oberlee") and Christine Ciccarone ("Ciccarone") were Assistant Principals at the School, reporting to Houlihan, and also supervising Plaintiffs.

27. Until the fall of 2014, when they were constructively discharged, Plaintiffs Cecelia Edelmann ("Cecelia") and Carol Linnell ("Carol") were employed at the School as teachers, and both were tenured.

## *Cecelia Edelmann*

28. Cecelia is fifty-two (52) years old, and commenced employment with the School, in or around 1995, as a Fine Arts teacher.

29. Until the 2012-2013 school year, Cecelia received uniformly positive Annual Professional Performance Review Evaluations.

30. Indeed, prior to the 2012-2013 academic school year, Cecelia had never received a negative performance evaluation or disciplinary write up.

31. Cecelia was so devoted to her students, that she developed a rigorous curriculum for them which developed their skills for college admission.

7

32. Cecelia went above and beyond her duties as an art teacher, fostering a partnership with SUNY FIT, coordinating and implementing the School's art show, and managing a student fashion club.

33. At some point during the course of Cecelia's tenure at the School, Defendant Oberle became the Assistant Principal of Urban Arts. Accordingly, Oberle was Cecelia's supervisor.

34. In or around January 2013, Principal Houlihan, with the DOE's approval, appointed Defendant Ciccarone, as the interim acting Assistant Principal of the School. Accordingly, Ciccarone was Carol's supervisor.

### *Carol Linell*

35. Plaintiff Carol Linell is fifty-six (56) years old, and has thirty (30) years of teaching experience as a special education teacher, including 18 years at the School.

36. Until Houlihan's arrival at the School, Cecelia received uniformly positive Annual Professional Performance Review Evaluations.

37. During her tenure at the School, Carol was a resource room teacher, and was partly responsible for creating the Resource Room curriculum at the School.

38. Carol was a devoted teacher, and many of her special education students went on to attend 4 year colleges and graduate with degrees.

## 1) Age Discrimination Against Both Plaintiffs

### *Defendants' Policy of Age Discrimination*

39. On information and belief, the School administration adopted a discriminatory policy towards older teachers in the School, in order to push them into early retirement and hire younger teachers.

8

40. For example, upon information and belief, Ciccarone, who is, on information and belief, younger than 40, held a deep rooted animus against older educators, in common with the other supervisors.

41. Whereas Ciccarone openly revealed her animus in explicitly discriminatory remarks at staff meetings, without reprimand, the other supervisors expressed their animus in adverse acts against Plaintiffs, while favoring younger teachers, and, on information and belief, replaced both Plaintiffs with younger teachers.

42. During staff meetings, Ciccarone emphasized her continued effort and ability to hire young teachers and evaluators, making it clear to the existing staff that if you were over an age she deemed acceptable, you were no longer of any use in the workforce.

### *Age Discrimination Against Cecelia*

43. Cecelia's supervisors targeted her with adverse acts, unlike her younger colleagues, including by mandating that she carry a disproportionally greater workload, work through lunch, and not go to the bathroom to relieve herself between classes.

44. Specifically, Oberle mandated that Cecelia, on her own, conduct weekly team teacher department meetings during lunch. Cecelia was responsible for creating the calendar and planning topics for the meetings, taking notes during the meetings, and reporting the substance of the meetings to her supervisors.

45. When Cecelia asked Oberle if he would rotate the department meetings or at least assign someone to help her conduct the weekly meetings, Oberle told Cecelia that this was her job, and adamantly refused to assign any of the tasks to her younger colleagues.

46. Cecelia's supervisors ordered Cecelia not leave her classroom for any reason during the school day, not even to use the restroom facilities between class periods, unless she was on lunch break.

47. Oberle targeted Cecelia with frequent, overtly disparaging remarks and even went so far as to threaten Cecelia's continued employment, and screamed at her that he could easily replace her with two new teachers.

48. Although Cecelia contacted the DOE regarding the deplorable working conditions created by her supervisors, no one at the DOE contacted Cecelia to address her complaints of discrimination on the basis of age.

49. When Cecelia asked the DOE for advice on how to handle the situation, the only advice she received was to either quit or retire.

50. By 2014, Cecelia had begun to experience blackouts and bouts of amnesia, and she suffered a mental breakdown, as a result of the distress caused by her supervisor, on the basis of her age, after which she was hospitalized and diagnosed with Post Traumatic Stress Disorder.

51. Accordingly, from approximately April 23, 2014 to May 30, 2014, Cecelia had to take a leave from work to attend to her medical needs.

52. Finally, on September 3, 2014, after nearly two years of discrimination and harassment, seeing no other escape from her situation, Cecelia retired, constituting a constructive discharge.

53. Upon information and belief, after her constructive discharge, Defendants replaced Cecelia with a younger teacher.

10

## *Age Discrimination Against Carol*

54. With regard to Carol, the age-based animus against Carol was reflected in Ciccarone's acts and in her constantly criticizing Carol's program with special education students in the Resource Room, even though her special education students were able to achieve academic success as a result of her program, including by graduation and receipt of Regents and Advanced Regents Diplomas and attendance at 4 year colleges and awards of college degrees.

55. Resource Room teachers receive an additional payment for their work in contrast to other teachers.

56. In or around June 2014, Ciccarone informed Carol that there were not enough Resource Room classes or students to accommodate her program, and Ciccarone and Houlihan informed Carol that she would be re-assigned to instruct Self-Contained Classes in English as well as teach some Resource Room classes.

57. Thereafter, in or around September 2014, all the younger teachers were restored to the Resource Room except for Carol, by her supervisors creating ten (10) new Resource Room classes, preventing her from earning the additional salary for Resource Room teaching.

58. Notably, the supervisors assigned the new classes to several teachers far less qualified than Carol, as they were not licensed in special education and had never before taught Resource Room classes.

59. Adding insult to injury, her supervisors asked Carol to give these teachers guidance, which would increase her workload, although her supervisors purported to be dissatisfied with her Resource Room work.

11

60. In addition, her supervisors wrote biased negative evaluations for Carol, and not for comparable younger teachers, rating them "Effective," "Well-Developed," and "Highly Effective."

61. In November 2014, Carol was rated "Ineffective" in some categories, although in her 29 prior years of teaching she had never received such a rating

62. The only difference between Carol's prior evaluations and the above evaluation was the new appointments of Houlihan and Ciccarone.

63. Under the new evaluation system of the DOE, sufficient Ineffective ratings can lead to a teacher's being brought up on charges and, in part, could lead to dismissal.

64. On October 16, 2014, Carol retired, as she could no longer tolerate the discrimination against her on the basis of her age, constituting a constructive discharge.

65. On information and belief, Carol was replaced upon her constructive discharge with a younger teacher.

## 2(a) Gender Discrimination Against Cecelia

66. Oberle, who is male, targeted Cecelia on the basis of her female gender, with frequent, explicitly sexual, lewd and disparaging remarks, as well as insults about child-bearing, for weeks on end, and sometimes up to several times a day.

67. In one instance, Oberle informed Cecelia that he had spoken to staff members on different occasions regarding her breasts and that the "general consensus" was that Carol had a "boob job."

68. In another instance, Oberle told Ceclia that he had discussed her breast size with his office staff and Cecelia's co-worker, Ms. General, and that he and the staff had collectively decided that Cecelia wore pushup bras.

12

69. Moreover, Oberle advised Cecelia that "[she] should have a baby [because she] would make a wonderful mother," even though he knew that Cecelia had had a hysterectomy and even though she personally reminded Oberle of this fact, and kindly asked for him to cease talking about her potential motherhood.

70. Despite her pleas, Oberle continued to harass Cecelia with talk of motherhood and repeatedly taunted her with her inability to have children.

71. Although Cecelia contacted her union and the DOE regarding the disparate and hostile working conditions created by her supervisor, no one at the DOE contacted Cecelia regarding her complaints of discrimination on the basis of gender.

72. On information and belief, no one at the DOE conducted any investigation into Cecelia's allegations, in clear disregard of its duty to prevent and remedy unlawful discrimination against her.

73. On information and belief, Oberle and Houlihan were never reprimanded or in any way disciplined by the DOE for gender-based discrimination against Cecelia.

74. Just the opposite, her supervisors had free reign, and during the Spring 2014 semester, Cecelia had a post-observation meeting with Oberle and Houlihan, and her union representative.

75. During the meeting, Cecelia complained about Oberle's wholly inappropriate conduct to Principal Houlihan, but Houlihan was willfully blind, and dismissed Cecelia's valid complaints of discrimination, telling her "I work closely with [Oberle] and I don't believe he has done anything wrong."

76. At the same meeting, Oberle and Houlihan berated Cecelia regarding her purportedly poor job performance, and accused Cecelia of being an "Ineffective" teacher, which had

13

never happened in her prior 17 years of teaching, and confronted her with an outdated curriculum she had already revised, directing her to re-do it, which was pretext to cloak their discriminatory policies.

77. The only difference between Carol's prior evaluations and the above evaluation was the new appointments of Houlihan and Ciccarone.

78. Under the new evaluation system of the DOE, sufficient ineffective ratings can lead to a teacher's being brought up on charges and, in part, could lead to dismissal.

79. As described above, by 2014, Cecelia had begun to experience blackouts and bouts of amnesia, and she suffered a mental breakdown, as a result of the distress caused by her supervisor, on the basis of her gender, after which she was hospitalized and diagnosed with Post Traumatic Stress Disorder.

80. Accordingly, from approximately April 23, 2014 to May 30, 2014, Cecelia had to take a leave from work to attend to her medical needs.

81. Finally, on September 3, 2014, after nearly two years of harassment, seeing no other escape from her situation, Cecelia retired, constituting a constructive discharge.

## 2(b) Disability Discrimination Against Cecelia

82. Cecelia has suffered from birth from an immune disorder which is a recognized disability within the meaning of the ADA.

83. As a direct result of the inhumane and caustic work conditions. due in part to age and gender discrimination by her supervisors and the DOE's failure to address or remedy the discrimination, Cecelia became increasingly sick and physically ill between 2012, when the new administration at the school began, and her constructive discharge in fall of 2014, by which time she had also developed Post-Traumatic Stress Disorder.

14

84. For example, in or around September 2013, Cecelia had to take a semester long medical sabbatical from work, because she was suffering from increasing levels of anxiety, which was manifested by physical symptoms. Specifically, Cecelia experienced problems with her digestive system so severe that she was hospitalized on three (3) separate occasions.

85. On or about February 1, 2014, Cecelia returned to work from medical leave, but her supervisors continued to target her, despite her disability and recent medical leave.

86. On her return, Cecelia provided her supervisors with a physician's note, which mandated that she take a lunch break as an accommodation. Cecelia even offered to provide extra help, such as giving workshops and training on the weekends, after hours, or during the holiday breaks, instead of her lunch hour.

87. Her supervisors' response was to ignore her request and they stated that the only time to provide such extra help was during her lunch break, and they purposefully scheduled professional workshops and team teacher meetings for her during her lunch break.

88. Her supervisors' failure to even interact with Cecelia on how to reasonably accommodate let alone deny her request left Cecelia no time to eat during her workday in clear disregard of her medically indicated needs and her doctor's medical order, which had been submitted to the School administration.

89. Worse yet, Oberle added to Cecelia's physical work load, despite her disability and medical status, by ordering her to work overtime to clean out a dumpster size load of garbage that was dumped in her classroom during her medical leave, refusing her any assistance.

15

90. After her medical leave, and despite her disability, Oberle humiliated Cecelia in numerous other ways, by yelling at her and reprimanding her during her teaching periods *in front of her students* for purportedly being "out of compliance" because she had not used a slab roller for clay work during her art lessons.

91. A slab roller would be an excessively heavy piece of equipment for Cecelia to move, given her medical condition, and considering that by the time she left the School in 2014, she weighed approximately 80 pounds. In fact the slab roller, which had been stored in the School's basement for over a year, was not required to be used during Cecelia's lessons.

92. Oberle imposed other onerous measures against Cecelia after her medical leave, and instead of accommodating her small request to be permitted to eat lunch, subjected her to disproportionally greater work assignments that were not necessary, in contrast to her non-disabled colleagues.

93. For example, Oberle mandated that Cecelia meet with him at the conclusion of her workday, which started at 6:00 a.m. Yet, when Cecelia arrived at these meetings, more than 8 hours later, she found that Oberle had sent his secretary home, and she was left to wait sometimes half an hour before Oberle bothered to acknowledge her.

94. Oberle also mandated that Cecelia attend team teacher meetings with teachers outside of her department and which had no correlation to the Fine Arts department.

95. Oberle discriminated against Cecelia in numerous other ways, in contrast to her non-disabled comparators, including by barring her from access to the student grading system, effectively preventing her from performing her job duties, instructing his secretary to call

16

and interrupt her classes to distract her from teaching, often on insignificant matters, sometimes calling up to four times in a single lesson plan, and faulting her performance

96. Notably, Oberle never questioned Cecelia's work performance prior to her medical sabbatical.

### 3(a) Defamation Against Carol

97. On or about October 16, 2013, Carol proctored the administration of the Preliminary Scholastic Aptitude Test ("PSAT") at the School.

98. During the exam, a student walked in late while Carol was giving instructions and Carol took her attendance and permitted her to take the exam.

99. During a later five minute break, the student realized she was in the wrong test room, even though the room number was posted on the chalkboard and the student's ID had been checked.

100. In response, Carol called an aid from the hallway and told the aid to escort the student to her assigned room, to her proper test location.

101. A short while later, the student was returned to Carol's room by a hall monitor, and she completed her exam on time.

102. Upon information and belief, Carol acted within the scope of her authority and in compliance with the rules and regulations of the College Board. She herself could not leave the exam room to escort the student elsewhere and up to two students are permitted to leave an exam room during breaks for specified reasons, such as bathroom trips.

103. On or about October 24, 2013, Carol received a letter from the School's Assistant Principal for Security advising her to bring a union representative with her to a disciplinary conference.

17

104. At the conference, Carol was confronted by four (4) administrators, including Ciccarone, and they reprimanded Carol for purportedly failing to follow school protocol during the PSAT exam.

105. Further, at this meeting, the administrators additionally accused Carol of violating protocol during the January 20, 2013 U.S. History Regents Exam.

106. (The accusation regarding the 2013 Regents exam was patently false, as another, younger, teacher committed the purported violation, not Carol.)

107. The meeting was the first time Carol had ever been accused of violating State testing protocol in 28 years.

108. Thereafter, the School issued a disciplinary letter to Carol, dated November 15, 2014, which was placed in her personnel file, and, on information and belief, was circulated to others for some time afterwards.

109. Notably, Houlihan did not sign the letter and did not attend the meeting, and another Assistant Principal stated he would not sign the letter.

110. Subsequently, other staff members told Carol they had seen the letter, or that she was "the hot topic" of talk at the School or said, "nice letter, Carol."

111. The false statements in the letter were never retracted.

112. The allegations of misconduct during a State exam had a severe negative affect on Carol's professional reputation, and will hinder Carol's ability to find alternative work in the teaching profession.

113. Other, false, written statements about Carol were made by her supervisor in September 2014.

18

114. On three consecutive days, on or about September 9, 10 and 11, while Carol was out sick, Ciccarone sent Carol e-mails accusing Carol of failing to provide Substitute Lesson Plans, when, in fact, this was not the case.

115. Upon information and belief, there were a number of Carol's Plans on record in the School, as it was her uniform practice and custom to always provide additional Sub Plans in her students' folders, in case she was out sick.

116. It was also the uniform practice and custom of Ciccarone to copy Houlihan on all e-mails, and on information and belief, in the above described e-mails as well, and discovery may show the e-mails were copied to others.

## 3(b) First Amendment Retaliation Against Carol

117. After the October meeting to reprimand Carol in regard to the PSAT exam, Defendants issued the aforementioned November 15, 2013 disciplinary letter concerning the PSAT exam protocol, which included defamatory statements regarding Carol, Carol submitted a grievance to her union regarding the letter.

118. Also, after the reprimand, Carol independently communicated with the College Board to ascertain the policies on exam protocol for students and proctors that were relevant to the reprimand.

119. Carol independently communicated with the College Board regarding the School's own conduct during test administration and found that the School was in violation of regulations regarding test administration.

120. One concern Carol had for students taking the PSAT exam was the School's policy, announced over the loudspeakers before the exam, that no student could leave the exam room for any reason whatsoever during testing, including to use the bathroom.

19

121. The College Board has no such policy, and under its policy students are permitted to use bathroom facilities one or two at a time, unaccompanied.

122. Upon information and belief, Houlihan and Ciccarone suspected that Carol knew of the School's violations regarding test administrations, and they retaliated against her for exercising her rights to protected speech in her communications to the College Board and in her association with her union.

123. After a meeting with Houlihan and Carol's union representative, in which Carol had informed Houlihan that the School had violated testing procedures under the College Board's rules, Houlihan told the union representative that if Carol did not divulge whatever information she had against the School, Houlihan "would make a lot of trouble for her (Carol)."

124. Retaliation had already started when, on or about November 14, 2013, Ciccarone conducted an informal classroom observation of Carol's first period class, and, inexplicably, rated Carol as "Ineffective" in the categories of "Setting Instructional Outcomes" and "Designing Coherent Instruction," and accused Carol of being disrespectful to students and failing to foster "an environment of respect and rapport."

125. Prior to the 2013 academic school year, for 29 years, Carol had received almost entirely positive performance evaluations.

126. Indeed, the only difference between Carol's prior evaluations and the aforementioned November 14, 2013 evaluation was the appointment of Houlihan and Ciccarone.

127. Carol complained directly to Ciccarone and Houlihan regarding the retaliation and told told them to "stop picking on [her]."

20

128. Months later, Carol's new union representative, attempted to intervene, but for Carol, her supervisors' retaliatory actions only worsened, in further retaliation.

## *Negligence, Negligent Training And Negligent Supervision*

129. The DOE has published anti-discrimination policies on its website, and has procedures in place to address unlawful employment discrimination.

http://schools.nyc.gov/Offices/GeneralCounsel/Investigative/OEO/KeyDocuments/notify
nondiscrimpolicy.htm

130. On information and belief, the DOE has anti-discrimination training and policies in place for school supervisors.

131. On information and belief, the DOE requires its supervisors to prevent or address employment discrimination.

132. Nonetheless, although Cecelia and Carol informed Houlihan and the DOE of the discriminatory and retaliatory actions against them, and those actions were known to their union, nothing was done to alleviate their situation.

133. Upon information and belief, neither Houlihan nor the DOE conducted any investigation into the conduct of Oberle or Ciccarone, in clear disregard of their duty to address unlawful discrimination and retaliation.

134. Furthermore, upon information and belief, Houlihan, Oberle and Ciccarone, were never reprimanded or in any way disciplined by the DOE for their deplorable treatment of Cecelia and Carol.

135. A number of Ceclia's calls to the DOE were not answered, and those that were returned provided no guidance. Indeed,

21

136. As stated above, the only advice Cecelia received from the DOE was to either quit or retire.

137. In sum, Houlihan and the DOE failed to adequately train or supervise its employees in anti-discrimination policies and procedures and breached its duty to prevent, address and remedy unlawful discrimination and retaliation.

## CLAIMS FOR RELIEF

### ADD MONELL LIABILITY TO Const. claims!!

### AS AND FOR THE FIRST CLAIM OF RELIEF

*Age Discrimination in violation the Equal Protection Clause of the United States Constitution pursuant to 42 U.S.C. § 1983, the New York State Human Rights Law (N.Y. Exec. Law §§ 290 et seq.)("NYSHRL") and the New York City Human Rights Law (N.Y. City Admin. Code § 8-101 et seq.)("NYCHRL")*

138.    Plaintiffs repeat, re-allege, and incorporate each and every allegation set forth in Paragraphs 1 through 13t herein.

139.    By way of the foregoing, and acting under color of state law to deprive Plaintiffs Edelmann and Linnell of their right to be free of age discrimination in employment, the individual Defendants are liable for violation of 42 U.S.C. § 1983, or the ADEA, which prohibit the deprivation under color of state law the rights secured by the United States Constitution or by statute. Defendants have violated Plaintiffs rights to be free of age discrimination in employment by subjecting both Plaintiffs to disparate treatment on the basis of their age: (1) by treating Plaintiffs, who were older than 40 years between 2012 and 2014, less well than their younger comparators on the basis of their age, by assigning them disproportionally greater workloads, or by transfer resulting in loss of income, or by biased negative evaluations; (2) by constructively discharging Plaintiffs on the basis of

22

their age; and, (3) by replacing one or both Plaintiffs with younger teachers, and (4) Defendants would not have committed these acts against Plaintiffs but for their age, in violation of the Equal Protection Clause of the United States Constitution pursuant to 42 U.S.C. § 1983, the New York State Human Rights Law (N.Y. Exec. Law §§ 290 et. seq.)("NYSHRL") and the New York City Human Rights Law (N.Y. City Admin. Code § 8-101 et seq.)("NYCHRL").

140.    As a direct and proximate result of Defendants' unlawful actions, Plaintiffs have suffered, and will continue to suffer,  loss of income and other financial benefits, a loss of professional opportunities and future income, extreme emotional distress, physical, mental and emotional injury and pain, mental anguish, pain and suffering, humiliation and embarrassment.

141.    By way of the foregoing, Defendants Kaye Houlihan, Christine Ciccarone, and Thomas Oberle aided, abetted, incited, compelled and coerced the aforementioned discriminatory treatment, in violation of the Equal Protection Clause of the United States Constitution pursuant to 42 U.S.C. § 1983, or the Age Discrimination in Employment Act, 29 U.S.C. § 621 et al., the New York State Human Rights Law, (N.Y. Exec. Law § 290 *et seq.*) and the New York City Human Rights Law (N.Y. City Admin. Code § 8-101 *et seq.*)

## AS AND FOR THE SECOND CLAIM OF RELIEF

*Gender Discrimination in violation of the Equal Protection Clause of the United States Constitution pursuant to 42 U.S.C. § 1983, the New York State Human Rights Law (N.Y. Exec. Law §§ 290 et. seq.)("NYSHRL") and the New York City Human Rights Law (N.Y. City Admin. Code § 8-101 et seq.)("NYCHRL")*

142.    Plaintiffs repeat, re-allege, and incorporate each and every allegation set forth in Paragraphs 1 through 141 herein.

143.    By way of the foregoing, and acting under color of state law to deprive Plaintiff Ceclia Edelmann of her right to be free of gender discrimination in employment, the individual Defendants are liable for violation of 42 U.S.C. § 1983, which prohibits the deprivation under color of state law of the rights secured by the United States Constitution. Defendants have violated Plaintiff's right to be free of gender discrimination in employment by subjecting Plaintiff to a hostile work environment on the basis of her gender by: (1) subjecting Plaintiff, who is female, to sexually explicit remarks and remarks about her inability to be a mother; (2) with such remarks permeating her workplace with discriminatory intimidation, so sufficiently severe or pervasive as to alter the conditions of her work environment; and, (3) with such remarks spoken by her male supervisor, who created the hostile work environment, in violation of the Equal Protection Clause of the United States Constitution pursuant to 42 U.S.C. § 1983, the New York State Human Rights Law (N.Y. Exec. Law §§ 290 et. seq.)("NYSHRL") and the New York City Human Rights Law (N.Y. City Admin. Code § 8-101 et seq.)("NYCHRL").

144.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered, and will continue to suffer, loss of income and other financial benefits, a loss of

24

professional opportunities and future income, extreme emotional distress, physical, mental and emotional injury and pain, mental anguish, pain and suffering, humiliation and embarrassment.

145.   By way of the foregoing, Defendants Kaye Houlihan, Thomas Oberle and Christine Ciccarone aided, abetted, incited, compelled and coerced the aforementioned discriminatory treatment, in violation of the of the Equal Protection Clause of the United States Constitution pursuant to 42 U.S.C. § 1983, the New York State Human Rights Law (N.Y. Exec. Law §§ 290 et. seq.)("NYSHRL") and the New York City Human Rights Law (N.Y. City Admin. Code § 8-101 et seq.)("NYCHRL").

## AS AND FOR THE THIRD CLAIM FOR RELIEF

*Disability Discrimination in violation of the Americans with Disabilities Act ("the ADA"), 42 U.S.C. § 12131* et seq.*, the New York State Human Rights Law (N.Y. Exec. Law §§ 290 et. seq.)("NYSHRL") and the New York City Human Rights Law (N.Y. City Admin. Code § 8-101 et seq.)("NYCHRL")*

146.   Plaintiffs repeat, re-allege, and incorporate each and every allegation set forth in Paragraphs 1 through 145 herein.

147.   By way of the foregoing, Defendants failed to accommodate Plaintiff Cecelia Edelmann on the basis of her disability, as: (1) Plaintiff has a legally recognized disability, an immune disorder, with digestive problems, within the meaning of the ADA; (2) Defendants were aware of her disability, as she submitted her physician's note on her medical condition following her medical leave, which included the request for a reasonable accommodation, for Plaintiff to eat lunch; (3) Plaintiff could perform the essential functions of her job by eating or not eating lunch; and (4) her supervisor refused her requested accommodation, requiring her to work through lunch instead with extra

25

work assignments, in violation of the Americans with Disabilities Act ("the ADA"), 42 U.S.C. § 12131 *et seq.*, the New York State Human Rights Law (N.Y. Exec. Law §§ 290 *et. seq.*)("NYSHRL") and the New York City Human Rights Law (N.Y. City Admin. Code § 8-101 *et seq.*)("NYCHRL").

148. As a direct and proximate result of Defendants' unlawful actions, committed with malice or reckless indifference, Plaintiff has suffered, and will continue to suffer, loss of income and other financial benefits, a loss of professional opportunities and future income, extreme emotional distress, physical, mental and emotional injury and pain, and mental anguish, pain and suffering, humiliation and embarrassment.

149. By way of the foregoing, Defendants Kaye Houlihan, Thomas Oberle and Christine Ciccarone aided, abetted, incited, compelled and coerced the aforementioned discriminatory treatment, in violation of the Americans with Disabilities Act ("the ADA"), 42 U.S.C. § 12131 *et seq.*, New York State Human Rights Law, (N.Y. Exec. Law § 290 et seq.), the New York City Human Rights Law (N.Y. City Admin. Code § 8-101 *et seq.*).

## AS AND FOR THE FOURTH CLAIM FOR RELIEF

*Retaliation in Violation of the First Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.*

150. Plaintiffs repeat, re-allege, and incorporate each and every allegation set forth in Paragraphs 1 through 149 herein.

151. By way of the foregoing, and acting under color of state law to deprive Plaintiff Carol Linell of her rights to freedom of speech and freedom of association in violation of the First Amendment to the United States Constitution, the individual Defendants are

liable for violation of 42 U.S.C. § 1983, which prohibits the deprivation under color of state law of the rights secured by the United States Constitution. Defendants have violated Plaintiff's right to free speech by retaliating against her for (1) her protected speech, independent communications to the College Board, as a citizen; (2) which was not part of her official duties as a teacher; (3) on a matter of public concern, the policies and procedures of the PSAT exam taken by students; (4) by subjecting her to a unwarranted disciplinary action and negative performance evaluations to chill her speech; and, (5) where Plaintiff's speech was a substantial or motivating factor for their actions; and, by further retaliating against Plaintiff for (1) her participation in a grievance, in association with her union; (2) subjecting Plaintiff to unwarranted disciplinary action and negative performance evaluations to discourage her association with the union; and (4) where Plaintiff's union association was a substantial or motivating factor for their actions, Defendants retaliated against Plaintiff Carol Linell for her participation in protected speech and conduct in violation of the First Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

152.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered, and will continue to suffer, loss of income and other financial benefits, a loss of professional opportunities and future income, extreme emotional distress, physical, mental and emotional injury and pain, mental anguish, pain and suffering, humiliation and embarrassment.

153.    By way of the foregoing, Defendants Kaye Houlihan, Thomas Oberle and Christine Ciccarone aided, abetted, incited, compelled and coerced the aforementioned

27

discriminatory treatment, in violation of the of the First Amendment to the United States
Constitution pursuant to 42 U.S.C. § 1983.

## AS AND FOR THE FIFTH CLAIM FOR RELIEF

*Defamation in Violation of the New York State Common Law*

154.    Plaintiffs repeat, re-allege, and incorporate each and every allegation set forth in
Paragraphs 1 through 153 herein.

155.    By way of the foregoing, Defendants, in: (1) knowingly and falsely stating that
Plaintiff Linell committed professional misconduct during the PSAT exam, as well as
falsely stating that the misconduct of another teacher was Plaintiff's, as well as falsely
stating in e-mails that Plaintiff failed to provide Substitute Lesson Plans to the School; (2)
by making the false statements about the PSAT exam in a meeting and subsequently by
wide publication in a letter, and by copying another, her supervisor, or others, on the false
e-mails;; (3) the false statements were published to third parties, other employees in the
School; and (4) by such negligent or malicious conduct; (4) harmed Plaintiff's
professional reputation and future employment prospects; (5) on a matter outside the
scope of Defendants' official duties and privileges, where Plaintiff was an exam proctor
or at home and ill, Defendants defamed Plaintiff in violation of New York State Common
Law.

## AS AND FOR THE SIXH CLAIM FOR RELIEF
*Negligence in Violation of the New York State Common Law*

156.    Plaintiffs repeat, re-allege, and incorporate each and every allegation set forth in
Paragraphs 1 through 145 herein.

28

157.    By way of the foregoing, in: (1) failing to properly implement any anti-discrimination, anti-harassment, or anti-retaliation policies; (2) ignoring Plaintiffs' complaints of a hostile work environment, discrimination and retaliation; (3) purposefully failing to reprimand the individual Defendants following Plaintiffs' complaints of a hostile work environment, discrimination, and retaliation; and (4) permitting the individual Defendants to subject Plaintiffs to continued acts of discrimination and retaliation, Defendants breached their duty to prevent the aforementioned harms to Plaintiffs, causing them the aforementioned injuries, and acted negligently with respect to Plaintiffs in violation of New York State Common Law.

## AS AND FOR THE SIXTH CLAIM FOR RELIEF
*Negligent Supervision in Violation of New York State Common Law*

158.    Plaintiffs repeat, re-allege, and incorporate each and every allegation set forth in Paragraphs 1 through 144 herein.

159.    By way of the foregoing, in: (1) failing to supervise Plaintiff's supervisors in proper anti-discrimination, anti-harassment, and anti-retaliation policies; (2) permitting the individual Defendants to subject Plaintiffs to continued acts of discrimination and retaliation; (3) ignoring Plaintiffs' complaints of a hostile work environment, discrimination and retaliation; (4) purposefully failing to reprimand the individual Defendants following Plaintiffs' complaints of a hostile work environment, discrimination, and retaliation, Defendants breached their duty to prevent the aforementioned harms to Plaintiffs, causing them the aforementioned injuries,

29

Defendants negligently supervised Plaintiffs' supervisors in violation of the New York

State Common Law.

## AS AND FOR THE SEVENTH CLAIM FOR RELIEF

*Negligent Training in Violation of New York State Common Law*

160.    Plaintiffs repeat, re-allege, and incorporate each and every allegation set forth in

Paragraphs 1 through 146 herein.

161.    By way of the foregoing, in: (1) failing to train Plaintiff's supervisors in proper

anti-discrimination, anti-harassment, and anti0retaliation policies; (2) permitting the

individual Defendants to subject Plaintiffs to continued acts of discrimination and

retaliation; (3) ignoring Plaintiffs' complaints of a hostile work environment,

discrimination and retaliation; (4) purposefully failing to reprimand the individual

Defendants following Plaintiffs' complaints of a hostile work environment,

discrimination and retaliation, Defendants breached their duty to prevent the

aforementioned harms to Plaintiffs, causing them the aforementioned injuries,

Defendants negligently trained Plaintiffs' supervisors in violation of New York State

Common Law.

## AS AND FOR THE EIGHTH CLAIM FOR RELIEF

*Retaliation in Violation of the First Amendment of the United States Constitution*
*pursuant to 42 U.S.C. § 1983.*

162.    Plaintiffs repeat, re-allege, and incorporate each and every allegation set forth in

Paragraphs 1 through 149 herein.

163.    By way of the foregoing, in: (1) subjecting Plaintiff Linell to unwarranted and

frivolous disciplinary action in retaliation for her complaints to the Princeton Review

Board; (2) subjecting Plaintiff Linell to unwarranted and frivolous disciplinary action in retaliation for her participation in a grievance; (3) subjecting Plaintiff Linell to unwarranted and frivolous disciplinary action in retaliation for her objections to negative performance evaluations; and (4) targeting Plaintiff Linell in retaliation for her protected conduct, Defendants retaliated against Plaintiff Carol Linell for her participation in protected conduct in violation of the First Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

## DEFENDANT'S LIABILITY

164.      Defendant DOE is liable for its employees' deprivation of Plaintiff's rights because such acts were taken in accordance with the Defendant's custom or practice of discriminating and/or selectively treating individuals; these practices were so persistent and widespread that they constitute the constructive acquiescence of policymakers; and the individual policymakers directly participated in and/or tacitly condoned the discrimination/retaliation to which Plaintiff was subjected.

**WHEREFORE,** the Plaintiffs demand judgment against the Defendants for all compensatory, emotional, psychological and punitive damages, lost compensation, front pay, back pay, liquidated damage, injunctive relief, and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that the Court grant the Plaintiffs any other relief to which they are entitled, including but not limited to:

1.      Awarding reasonable attorneys fees and the costs and disbursements of this action;

2.   Granting such other and further relief that to the Court seems just and proper.

**Further,** Plaintiffs demand a trial by jury.

Dated: Garden City, New York
      November 17, 2015

THE LAW OFFICE OF
STEVEN A. MORELLI, P.C.
*Attorneys for Plaintiffs*
990 Stewart Avenue
Garden City, New York 11530
(516) 393-9151

Rhoda Yohai Andors (RA7538)

## VERIFICATION

State of New York            )
                             ) ss:
County of Nassau             )

CECILIA EDELMANN, being duly sworn, deposes and says that deponent is a Plaintiff in the within action; that he has read the forgoing **Verified Amended Complaint** and knows the contents thereof; that the same is true to deponent's own knowledge, except as to the matter thereinstated to be alleged on information and belief, and that as to those matters deponent believes it to be true.

CECILIA EDELMANN

Sworn to before me this
17 day of November 2015

Notary Public

LISA MARIE DESTEFANO
Notary Public, State of New York
No.01DE6314507
Qualified in Suffolk County
Commission Expires November 17, 2018

## VERIFICATION

State of New York )
)  ss:
County of Nassau )

CAROL LINELL, being duly sworn, deposes and says that deponent is a Plaintiff in the within action; that he has read the forgoing **Verified Amended Complaint** and knows the contents thereof; that the same is true to deponent's own knowledge, except as to the matter thereinstated to be alleged on information and belief, and that as to those matters deponent believes it to be true.

CAROL LINELL

Sworn to before me this
17th day of November 2015

Notary Public

LISA MARIE DESTEFANO
Notary Public, State of New York
No. 01DE5314907
Qualified in Suffolk County
Commission Expires November 17, 20____