1

1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2

3     - - - - - - - - - - - - -    X

4     CAROL LINELL, et al.,          :
                                              15-CV-5085(CBA)
5             Plaintiffs,            :

6            -against-              :        United States Courthouse
                                             Brooklyn, New York
7     NEW YORK CITY DEPARTMENT
      OF EDUCATION, et al.,          :

8             Defendant.            :        May 3, 2016
                                             3:00 o'clock p.m.
9     - - - - - - - - - - - - -    X

10

11                    TRANSCRIPT OF ORAL ARGUMENT
                  BEFORE THE HONORABLE CAROL BAGLEY AMON
12                   UNITED STATES DISTRICT JUDGE.

13
      APPEARANCES:
14

15    For the Plaintiff:           LAW OFFICE OF STEVEN A. MORELLI
                                   990 Stewart Avenue, Suite 130
16                                 Garden City, New York 11530

17                                 BY: GARY R. NOVINS, ESQ.

18
      For the Defendant:           NYC LAW DEPARTMENT
19                                 100 Church Street
                                   New York, New York 10007
20
                                   BY: TANYA N. BLOCKER, ESQ.
21

22    Court Reporter:             Charleane M. Heading
                                   225 Cadman Plaza East
23                                 Brooklyn, New York
                                   (718) 613-2643
24
      Proceedings recorded by mechanical stenography, transcript
25    produced by computer-aided transcription.

                   CMH      OCR      RMR      CRR      FCRR

                                                                    2

1         THE CLERK:  Linell versus New York City Department

2    of Education, 15-CR-5085, on for an oral argument.

3         THE COURT:  All right.  Do the parties want to state

4    their appearances, please, first for the plaintiff.

5         MR. NOVINS:  Good afternoon, Your Honor.  Gary R.

6    Novins, Esquire, for plaintiffs Carol Linell and Cecilia

7    Edelmann.

8         THE COURT:  And for the defendants?

9         MS. BLOCK:  Tanya Block, Your Honor, for all the

10   defendants.

11        THE COURT:  For all defendants.

12        Ms. Block, this is your motion.

13        MS. BLOCK:  Yes, it is.

14        THE COURT:  So you are not moving to dismiss

15   Ms. Edelmann's sex discrimination?

16        MS. BLOCK:  That's correct, Your Honor.

17        THE COURT:  But you are moving to dismiss her

18   disability claims under both the ADA and New York State Human

19   Rights Law?

20        MS. BLOCK:  Yes.

21        THE COURT:  Her age discrimination claims -- so I

22   guess that's it for both her disability and age discrimination

23   claims?

24        MS. BLOCK:  That's correct.

25        THE COURT:  All right.  Do you want to be heard on,

3

1   first of all, her ADA claim?

2            MS. BLOCK:  Yes, Your Honor.

3            Yes.  So for purposes of Plaintiff Edelmann's ADA

4   claim, they're, in part, time barred by the statute of

5   limitations.

6            THE COURT:  Why time barred?

7            MS. BLOCK:  If I understand the opposition

8   correctly, she is not bringing an ADA claim under the

9   constructive discharge.  So I'll withdraw that and say if that

10  is the case, they would be barred in its entirety.

11           THE COURT:  Because it's the failure to accommodate?

12           MS. BLOCK:  That is correct.

13           THE COURT:  And that is correct, right?  I think you

14  said in your papers it was the failure to accommodate,

15  correct?

16           MR. NOVINS:  Yes.  I'm not the drafter of it, Your

17  Honor, but I've read the papers and that is the position.

18           THE COURT:  Okay.  So we're talking about failure to

19  accommodate being time barred.

20           MS. BLOCK:  That's correct, Your Honor.

21           THE COURT:  That's because she --

22           MS. BLOCK:  She's outside the 300 day or beyond the

23  300 day statute of limitations.  She filed the OEO complaint

24  or the EEO complaint and the timing for that would have been

25  May 22, 2014.  She is alleging that her adverse employment

4

1  action actually took place in September of 2014.  Any actions

2  that are after May 22nd would thus be, excuse me, or prior to

3  that date would be time barred.

4         She doesn't allege any facts, timely facts, that is,

5  that would necessitate or plead an action for failure to

6  reasonably accommodate specifically her lunch breaks.  That is

7  what she's alleging.

8         THE COURT:  And that's because by the time she took

9  medical leave, there would have been nothing left to

10  accommodate because she was gone?

11         MS. BLOCK:  That is correct.  She was gone actually

12  the majority of that semester, from February to about April.

13         THE COURT:  Why isn't that correct, Counsel?  Why

14  isn't her ADA claim barred on the failure to accommodate

15  theory?

16         MR. NOVINS:  Your Honor, based on my review of the

17  paper pled, we're entitled to have an extension due to her

18  disability and discretionary in extending the period of time.

19  Her, plaintiff's contention that her disability is a cause for

20  her having additional --

21         THE COURT:  You mean there's some equitable tolling,

22  is that what your argument is?

23         MR. NOVINS:  Yes, Your Honor.

24         THE COURT:  And what is that, mental health issues?

25         MR. NOVINS:  Due to her post-traumatic stress

5

1    disorder, Your Honor, yes.

2            THE COURT:  Doesn't she have to, in effect,

3    establish that her claimed injuries would indicate an overall

4    inability to function in society?

5            MR. NOVINS:  Well, Your Honor, I mean, it's

6    plaintiff's contention she had the post-traumatic stress

7    disorder at the time of her medical leave coupled with the

8    extreme exacerbation of her immune disorder, her digestive

9    problems and her anxiety which would be a reason for being

10   able to have tolling to extend the period of time to start the

11   action.

12           THE COURT:  What's your response to the tolling?

13           MS. BLOCK:  Our response, Your Honor, is essentially

14   that plaintiff was not disabled -- even with her alleged

15   post-traumatic stress and immune disorder, the disability or

16   alleged disability did not prevent her from actually filing a

17   notice of claim timely in December --

18           THE COURT:  She filed on December 22, 2014?

19           MS. BLOCK:  That's correct, Your Honor.

20           THE COURT:  Now, I think the ADA claim is untimely.

21   I don't think that what has been alleged establishes equitable

22   tolling.

23           Now, with the New York State and Human Rights Law

24   claims, there is a one year statute against the DOE, correct?

25           MS. BLOCK:  That is correct, Your Honor.

6

1          THE COURT:  And why aren't those claims gone against

2     the DOE and the principals in their official capacities?  Why

3     aren't those claims gone, Counsel?

4          Why hasn't the statute run on those claims?  I'm

5     talking now just about the claims against DOE and the

6     principals in their official capacities.

7          MR. NOVINS:  I see.  Well, the sexual harassment

8     claim --

9          THE COURT:  No, I'm talking about the age

10    discrimination claim.

11         MS. BLOCK:  Disability.

12         THE COURT:  I'm sorry.  I'm talking about

13    disability.  We are just on her disability claims now.

14         It's a one year statute, correct, against the DOE

15    and the principals in their official capacity?  Do you agree,

16    Counsel, it's a one year statute?

17         MR. NOVINS:  Yes.

18         THE COURT:  So why isn't that gone?  Why hasn't that

19    run?

20         MR. NOVINS:  Your Honor, the plaintiffs contend that

21    Cecilia was constructively discharged September 3, 2014, the

22    date she actually left her job.  Carol, the other plaintiff,

23    was constructively discharged October 16, 2014.  Both dates

24    were within the one year limit.  So, basically, it's the

25    application -- as to when she left, plaintiffs contend that's

1   when they actually left when the one year would begin.

2           THE COURT:  You want to be heard in response to

3   that?

4           MS. BLOCK:  I do, Your Honor.  Thank you.

5           Because plaintiff's counsel is not asserting that

6   the September 2014 date in which she actually left was in

7   connection with her disability claim or that it's a

8   constructive discharge claim, that is the only timely claim.

9   Should they be bringing a constructive discharge disability

10  claim, then that would be the accrual date, however, they're

11  bringing a reasonable accommodation claim which they

12  acknowledge is for reasonable accommodation.  That is outside

13  the one year statute of limitations, similarly as it was under

14  the ADA claim, and for those reasons, those claims warrant

15  dismissal under a statute of limitation claims.

16          THE COURT:  Yes.  I think that is right based on the

17  nature of the claim.

18          So, I will dismiss the causes of action against the

19  DOE and the principals in their official capacity under the

20  New York State Human Rights and the New York City Human

21  Rights.

22          What about the plaintiffs' claims of disability

23  discrimination against the principals in their personal

24  capacities, why aren't they sufficient.

25          MS. BLOCK:  Well, for the same -- Your Honor, there

1   are no factors or there are no timely factors alleged that can

2   attribute any disability or anti-disability bias.

3           THE COURT:  What's the statute there though?  It's

4   three years, correct?

5           You're not talking about statute.  You're talking

6   about sufficiency obligations.

7           MS. BLOCK:  That is correct, Your Honor.  I'm

8   actually talking about the specific facts that are alleged.

9           THE COURT:  Okay.

10          MS. BLOCK:  There are no factual allegations against

11  them in their personal capacity by which would warrant any

12  liability for anti-age bias.

13          THE COURT:  Well, who are the principals that are

14  named in that?

15          MS. BLOCK:  I'll correct that.  We mean disability

16  bias.

17          The individuals that are specifically names are

18  Defendant Houlihan and Defendant Ciccarone.

19          THE COURT:  And there are no individual allegations

20  against them?

21          MS. BLOCK:  Not for purposes of the disability claim

22  for Edelmann and let me just correct that.  It's actually

23  Oberle who was Mrs. Edelmann's direct supervisor.  Beyond him

24  alleging that -- I think plaintiff alleges that, in a

25  conclusory fashion, that he denied her a lunch break.  That is

9

1    refuted by the notice of claim that plaintiff actually stated

2    as well as a 50-H in connection with that notice of claim in

3    which she testified that she was allowed to take or eat lunch

4    during these teaching sessions.

5            So that is the only allegation.  I'll stand

6    corrected, that was made against the individually named

7    defendants and only Defendant Oberle.  There are no

8    allegations as against Defendant Houlihan.

9            THE COURT:  Well, this is a motion to dismiss

10   though.  Can I consider the 50-H hearing on a motion to

11   dismiss?

12           MS. BLOCK:  It's incorporated by reference, Your

13   Honor.  Actually, plaintiff's counsel actually references it

14   in the complaint for purposes of the pleading requirement to

15   allege actions as against the individually named defendant.

16           THE COURT:  What does she say in the notice of

17   claim?

18           MS. BLOCK:  It's actually in the 50-H and she

19   actually testifies in a 50-H.

20           THE COURT:  But that's all 50-H.  You don't have a

21   separate document other than the 50-H?

22           MS. BLOCK:  We attached a notice of claim as well.

23   The notice of claim basically alleges that she was unable to

24   take lunch breaks.  That is countered by the 50-H transcript.

25           THE COURT:  But you are relying for all of this on

10

1   the 50-H transcript?

2          MS. BLOCK:  Specifically, for Thomas Oberle,

3   Defendant Oberle, in his individual capacity, yes, Your Honor.

4          THE COURT:  And there are cases that say that

5   limited references to 50-H is not sufficient to incorporate

6   the whole hearing.

7          MS. BLOCK:  And I'm not trying to -- I'm not trying

8   to incorporate the whole hearing, Your Honor.  What I am

9   attempting to do, however, is to show a contradiction in

10  plaintiffs' actual pleadings as to this particular fact and

11  that is why we're incorporating just that portion that was

12  attached to our moving papers incorporated by reference.

13         THE COURT:  Well, the notice of claim says that she,

14  her notice of claim says she wasn't allowed.

15         MS. BLOCK:  Yes, that's correct, Your Honor.

16         THE COURT:  So you're saying there's just a

17  contradiction between what she said in a notice of claim and

18  what she says here.

19         MS. BLOCK:  Yes, Your Honor.

20         THE COURT:  I think that that actually is a factual

21  issue that shouldn't be resolved on a motion to dismiss.  You

22  can assume that she include the 50-H hearing.  So, I am not

23  going to dismiss that claim on that ground.

24         Is the claim only against Oberle or is does she name

25  in the complaint other individuals other than Oberle?

11

1          MS. BLOCK:  She names in the complaint the principal

2  which is --

3          THE COURT:  Houlihan?

4          MS. BLOCK:  Houlihan, as well as Oberle.

5          THE COURT:  In the disability claim?

6          MS. BLOCK:  Yes, however, there are no facts as

7  against defendant Houlihan at all.  The only fact with respect

8  to, that those claims is the denial of a lunch break.

9          THE COURT:  But denial by whom?

10          MS. BLOCK:  By her direct supervisor which would be

11  Thomas Oberle.

12          THE COURT:  Okay.  So why do you have a claim there,

13  Counsel, against Houlihan?

14          MR. NOVINS:  The direct comments and instructions

15  were by the vice principal Thomas Oberle, but it's plaintiffs

16  contention that we'd like to have discovery because we believe

17  there would have been communications between Houlihan and

18  Oberle.

19          THE COURT:  There are no allegations in the

20  complaint against Houlihan with respect to this, correct?

21          MR. NOVINS:  Not specifically.  Specifically, it's

22  to Oberle, Your Honor.

23          THE COURT:  It's Oberle.  So since there are no

24  allegations against Houlihan, it has to be dismissed against

25  Houlihan.  You're not suggesting that you can amend the

1    pleading now to add anything else, are you?

2          MR. NOVINS:  No, Your Honor.

3          THE COURT:  Okay.  Well, it's dismissed against

4    Houlihan.

5          All right.  We turn to the age discrimination

6    claims.

7          MS. BLOCK:  Yes, Your Honor.  With respect to both

8    plaintiffs, for purposes of the age discrimination claims,

9    there's two arguments.

10          One is that they do not allege an adverse employment

11   action and the only adverse employment action that is alleged

12   for purposes of the opposition, as I understand it, is a

13   constructive discharge claim and for purposes of the

14   constructive discharge claim, it is our contention that there

15   was no intolerability with respect to forcing either plaintiff

16   to deem their job so intolerable that it would deem them to be

17   resigned.  There are no sufficient allegations other than

18   conclusory statements that the conduct was so intolerable to

19   force them to resign.

20          THE COURT:  Well, certainly not with respect to

21   Linell, but can you consider the overall position of

22   Ms. Edelmann when you talk about constructive discharge?

23   Because she does allege this age discrimination and she does

24   then talk about a horrible situation in light of the sexual

25   conditions in employment.  Can't you consider that in

13

1    determining whether she was constructively discharged?

2          MS. BLOCK:  Well, at this time, Your Honor, for

3    purposes of her hostile work environment claim based upon

4    sexual harassment, our only reason for not actually moving on

5    that claim is based upon most recent case law, Littlejohn, and

6    stating that one statement, it's only one statement that was

7    made.  We do not believe that statement will withstand summary

8    judgment, it is more of a straight remark, but our omission in

9    moving completely on that claim was only with respect to

10   LittleJohn.

11         THE COURT:  But she also makes claims about having

12   an added workload.  Both Edelmann and Linell make claims about

13   added workload which has the potential to be an adverse

14   employment action, correct?

15         MS. BLOCK:  Yes, it does have the potential and that

16   is the only claims that we arguably would agree, excessive

17   workload in this partial reassignment as we noted in our

18   papers, that we would agree that would be an actual adverse

19   employment action to constitute and on those grounds, we

20   determined that she, in those allegations of an adverse

21   employment action, doesn't raise the inference of age

22   discrimination.

23         THE COURT:  But there's comments by Ciccarone about

24   wanting younger employees.

25         MS. BLOCK:  There's one comment that plaintiff

14

1  alleges was made during a group or a teacher meeting that she

2  states that she wants to hire younger colleagues.  There's no

3  details in the complaint as to who these younger colleagues

4  are.

5          THE COURT:  Well, all they have to be is younger.

6          MS. BLOCK:  Well, they would have to be, Your Honor,

7  below the age of 40 or else they are within the same protected

8  category as Ms. Linell and Edelmann who are 50, 52 and 54, I

9  believe.  And there are no -- other than that conclusory

10 statement of younger teachers, there's no factual allegations

11 as against, as to who these younger teachers are or even if

12 these younger teachers are actually similarly situated to the

13 plaintiffs by which we could determine an inference or raise

14 an inference of age bias or discrimination.

15         THE COURT:  There are no allegations here against, I

16 believe I'm correct, against Houlihan under this claim here,

17 correct?

18         MS. BLOCK:  I would ask plaintiffs' counsel if he

19 can clarify that because I was under the impression that they

20 were, but there are no factual allegations.

21         THE COURT:  Are you naming the age discrimination

22 count Houlihan and if you are, where are the allegations about

23 her personal involvement?  I don't see that she's mentioned in

24 her age discrimination allegations.

25         MR. NOVINS:  Your Honor, while I'm checking, it's my

15

1    contention what defense counsel is saying, there's material

2    questions of fact.

3              THE COURT:  About what?

4              MR. NOVINS:  The age discrimination in terms of the

5    comments by --

6              THE COURT:  No, I think the comments raise questions

7    in fact.  I'm not going to dismiss the age discrimination

8    claims at this stage on that ground.  But where is Houlihan

9    named?  Where is she mentioned in Ms. Edelmann's age

10   discrimination allegations?

11             MR. NOVINS:  Paragraph 121 through 123, Your Honor.

12   There's allegations with regard to Houlihan and regarding job

13   performance which it's our contention that the discrimination

14   resulted in poor job performance reports.

15             THE COURT:  I'm talking about Edelmann now.

16             MR. NOVINS:  Yes, for Edelmann.

17             THE COURT:  For Edelmann.  What paragraphs are

18   you --

19             MR. NOVINS:  122, Your Honor, and 123.

20             THE COURT:  What does that have to do -- maybe I'm

21   looking.  I see something about college boards and testing.

22             MS. BLOCK:  That's in connection with her alleged

23   First Amendment retaliation, Your Honor.

24             THE COURT:  I don't think that has anything to do

25   with it.

16

1          MR. NOVINS:  Let me make sure I'm at the right

2    exhibit here.  I'm looking in defendants' papers at page 25 on

3    Exhibit B.  I'm sorry.  I'm looking at the summons, Your

4    Honor, in the initial summons.  Let me look at the federal

5    complaint.  My apologies.

6          MS. BLOCK:  May I be heard, Your Honor, while

7    counsel is looking, on your prior ruling in connection with

8    the age discrimination claim as against the Board of Education

9    and the individual defendants in their official capacity?

10         THE COURT:  I don't know that I've talked about the

11   age discrimination in their official capacity yet.

12         MS. BLOCK:  Well, that would be tantamount to DOE.

13         THE COURT:  Oh, DOE we haven't gotten to.

14         MS. BLOCK:  Okay.

15         THE COURT:  DOE is the question about whether that

16   phone call -- you mean whether you've got a municipal

17   liability claim against DOE?  I don't think that Ciccarone is

18   a final policy maker.  The question is about this contact with

19   DOE telling them about discrimination and they were

20   indifferent to that.

21         MS. BLOCK:  Are you referring to the First Amendment

22   claims?

23         THE COURT:  No.  No.

24         MS. BLOCK:  Okay.

25         THE COURT:  The question is she alleges -- this is

CMH        OCR        RMR        CRR        FCRR

17

1    when an entity becomes aware of discrimination and does

2    nothing about it which can call into play municipal liability.

3    That issue.  She alleges that she made a phone call to DOE.

4    I'm not sure what that means.

5              Did you find the allegations against Houlihan?

6    Because I don't think they are there.  You could be looking

7    for the rest of the day.

8              MR. NOVINS:  Yes.  I'm looking on pages 9 and 10,

9    Your Honor.  I don't see Principal Houlihan specifically

10   named, just Cecilia's supervisors without specifically

11   referencing which supervisor.

12             MS. BLOCKER:  It actually references the supervisor

13   Mr. Oberle as stating that he would terminate her or hire a

14   younger teacher in her place.  That was the actual comment I

15   wanted to just reference.  The comments being made or alleged

16   comments being made, there's still nothing in the complaint

17   that suggests that but for these comments, plaintiff would not

18   have had intolerable conduct and she only alleges one comment

19   by Oberle, no comments by defendant Houlihan, in connection

20   with, and I'm specifically talking about Edelmann in

21   connection with her age discrimination complaint.

22             THE COURT:  Yes.  I don't think that there's a claim

23   against Houlihan for age discrimination, that she said

24   anything about age discrimination.

25             Turning to this question of municipal liability, why

1    isn't the fact that she called DOE and complained that nothing

2    was done sufficient to bring to their attention her complaints

3    and they're not being responded to.

4           MS. BLOCK:  On that fact, Your Honor, again, that is

5    just a conclusory fashion.  She said she called the DOE,

6    doesn't say who at the BOE she called, what she spoke with,

7    what she complained about.  So, from that aspect, the DOE is

8    not or BOE, I should say, is not on notice of what plaintiff's

9    complaints are, whether they're discriminatory or not.

10          THE COURT:  Is there something you could supplement,

11   in terms of who she spoke to, what she said?  This is on the

12   DOE issue, the municipal liability of DOE.

13          MR. NOVINS:  Your Honor, the plaintiffs' contention

14   is that all interests should be against moving party,

15   discovery should be conducted, depositions be allowed to take

16   place and this could be expanded upon.

17          THE COURT:  Well, she has the capacity to expand

18   upon it right now.  She either knows she spoke to somebody,

19   she knows what she said.  Can she add facts to that?  Where is

20   the allegation in the complaint, in the amended complaint?

21   What allegation is it?

22          I just read page 48 and 50.  It does say she

23   contacted them regarding the deplorable working conditions.

24          I am going to let that claim go forward.  If it

25   doesn't pan out, it can be dealt with on summary judgment.  I

1  will let it go forward for the present time.

2        I think that takes care of Ms. Edelmann's case.  I

3  am not dismissing age discrimination claims under 1983, the

4  New York State Human Rights Law against the DOE, Oberle and

5  Ciccarone.  I am dismissing the case, that age discrimination

6  case against Houlihan because they do not say anything about

7  what she did or didn't do.

8        That takes us now to Linell's case, her age

9  discrimination case.  Again, she has a similar thing.  She

10  argues about increased workload, reduced income and she cites

11  Ciccarone's preference for younger teachers.  I don't believe

12  she says anything, Counsel, though about either Houlihan or

13  Oberle.

14        Ms. Blocker, are there allegations against Oberle?

15        MS. BLOCK:  There are, but if I can, Your Honor,

16  just circle back to your age discrimination claim as against

17  Edelmann, some of those claims as we cite in our moving papers

18  are outside the statute of limitation for at least the New

19  York City Human Rights Law and State Human Rights Law claims,

20  if not for the 1983 claims against the municipality.

21        So, in that regard, any of the allegations that are

22  outside or beyond, that took place July 20th of 2014 and

23  beyond would necessarily be out and that would be specifically

24  to Edelmann's comment that she had a disparate workload and

25  when the comment was made by Mr. Oberle or Defendant Oberle

20

1  concerning that she was, he would replace her with a younger,

2  with a younger teacher.

3          THE COURT:  But her workload, what are you talking

4  about?  You're talking about statute of limitations?

5          MS. BLOCK:  Yes, Your Honor.

6          THE COURT:  Well, her workload continued.  It's not

7  just --

8          MS. BLOCK:  She wasn't there so it didn't

9  necessarily -- Edelmann was out for a majority of the

10  semester, Your Honor.

11          THE COURT:  I'm not persuaded that the statute of

12  limitations bars its claims so I'm not going to dismiss on

13  that ground.

14          Let's turn to Linell's age discrimination claims

15  under 1983, New York State Human Rights Law and the City.  I

16  think the issues are pretty much the same.  I am correct

17  though, I believe, that there are no allegations against

18  Houlihan or Oberle with regard to Linell?

19          MS. BLOCK:  That is correct, Your Honor.

20          THE COURT:  Okay.  Have you seen any allegations?

21  Have I missed something?

22          MR. NOVINS:  No, I think they're applicable to

23  Christine Ciccarone with regard to Linell.

24          THE COURT:  So I will dismiss any of those

25  allegations of age discrimination against Houlihan and Oberle.

21

1          How has she alleged a municipal liability claim

2     against DOE?  She does not claim she made any phone calls to

3     DOE.

4          MR. NOVINS:  Paragraph 132, page 21, Your Honor.

5     Cecilia and Carol informed Houlihan and the DOE of the

6     discriminatory and retaliatory actions against them.  They

7     were known to the union.  Nothing was done to alleviate the

8     situation.  And that DOE did not conduct any investigation in

9     the conduct in paragraph 133.

10          It would be our contention there's material

11     questions of fact through paragraphs 134 and 135.

12          MS. BLOCK:  On Linell?

13          It's my understanding, Your Honor, that was for

14     Edelmann's assertion.  I'm just trying to confirm whether that

15     was as pled for purposes of Linell as well.

16          MR. NOVINS:  Well, paragraph 132 mentions Cecilia

17     and Carol informed Houlihan and the DOE.  It doesn't have just

18     Cecilia so for those purposes, both made complaints.

19          MS. BLOCK:  With respect to that paragraph, Your

20     Honor, I don't think it's actually clear as to whether the

21     complaints on behalf of Linell was in connection with age

22     discrimination or the complaints in connection with

23     retaliation, First Amendment.

24          THE COURT:  I don't know what that refers to.  This

25     allegation is not under the age discrimination allegations.

1  It is under negligence, training and supervision.

2        I don't think that bare allegation is sufficient and

3  it's in a different context.  I don't think that's sufficient

4  to raise a claim of municipal liability, for Linell to raise a

5  claim of municipal liability as to DOE.  I mean, if you have

6  something more specific, you could amend to add.  You can

7  always do that.

8        MR. NOVINS:  The only thing I can see, Your Honor,

9  is paragraph 63 on page 12, with the evaluation of paragraph

10  61 where Carol was rated ineffective in some categories, never

11  having received an effective rating, and under the new

12  evaluation with the DOE, sufficient ineffective ratings can

13  lead to teachers being brought up on charges and could lead to

14  dismissal.

15        THE COURT:  What does that have to do with anything?

16  I don't know that that deals with the issue I'm talking about.

17        What is the plausible claim of constructive

18  discharge with respect to Linell?

19        MR. NOVINS:  Because of the problems that occurred

20  with the PSAT and the complaints that were made, Linell

21  following up with the education department with regard to the

22  PSAT, the school administration punished her for her making

23  complaints because she turned out that they --

24        THE COURT:  That's a retaliation claim, isn't it?

25        MR. NOVINS:  Yes.

23

1          THE COURT:  I'm talking about constructive discharge

2     statute of limitations because she doesn't have a claim,

3     although she would have an age claim against Ciccarone.  How

4     does she have a timely claim against DOE under the New York

5     State Human Rights or the City?  How are they timely?

6          For those to be timely, she has to have a plausible

7     constructive discharge claim.  How does she establish it as a

8     constructive discharge, in other words, the circumstances were

9     so bad that she had to leave?  Where is that alleged?

10          MR. NOVINS:  I don't think it is.

11          THE COURT:  All right.  Then that means that the

12     claims against New York State Human Rights and City claims

13     against DOE are untimely so they are out.

14          The defamation claims, why aren't they sufficient?

15          MS. BLOCK:  For two reasons.  One, Your Honor, we

16     are unclear as it has not been pled what this defamatory

17     statement is or alleged defamatory statement is in accordance

18     with New York State case law which actually holds that the

19     particular words must be pled.

20          THE COURT:  Well, she says that they said that she

21     didn't follow the protocol on the PSATs, right, or at

22     ministering the PSATs?

23          MS. BLOCK:  She just alleges she was reprimanded for

24     not following protocol.  There's no allegation as to the

25     specific terms of a reprimand but I'll move on, Your Honor.

24

1        Our strongest argument is actually twofold.  One,
2   Ciccarone as well as Houlihan have qualified privilege which
3   applies here and plaintiff has not alleged that there was a
4   willful violation and, more importantly, plaintiffs alleged
5   retaliatory act predates the comments that she's alleging were
6   defamatory.
7        THE COURT:  I'm sorry.  You argue that they have
8   qualified privilege?
9        MS. BLOCK:  That is correct, Your Honor.
10       THE COURT:  Why is that?
11       MS. BLOCK:  Because both of them, both Ciccarone as
12  well as, Ciccarone being her direct supervisor and assistant
13  principal, Principal Houlihan being the supervisor of the
14  school, this was the alleged -- comments were contained in a
15  disciplinary letter which is a review of plaintiff's
16  performance which, in which qualified immunity attaches absent
17  some willful violation or at least an allegation of, that the
18  discipline and the contents within the discipline were willful
19  and that Ciccarone and Houlihan knew that she did not engage
20  in such conduct, but yet and still, included that in her
21  discipline.
22       MR. NOVINS:  Your Honor, if I may just speak.
23       As to paragraph 125, in addition to that allegation,
24  Linell accuses defendants of saying that Linell violated the
25  protocol of a U.S. history Regents exam when, in fact, it was

25

1   a different teacher that did it which is defamatory --

2            THE COURT:  Where is that?

3            MR. NOVINS:  Paragraphs 105, 106.  There was a

4   disciplinary letter put in her file and other teachers

5   throughout the school discussed this with her when she was not

6   the teacher.

7            THE COURT:  Where is the specific defamatory

8   statement here?  What paragraph is that in, that they accused

9   her of violating protocol during the U.S. history Regents

10  exam?

11           MR. NOVINS:  Yes, when she was not the teacher.  It

12  was a different teacher.  It's patently false on its face.

13           MS. BLOCK:  Actually, the allegation is that she

14  didn't follow the protocol for the PSAT exam.

15           MR. NOVINS:  Well, there's two.  There's also the

16  Regents, the PSAT and then you have the Regents.  But if she

17  got reprimanded and it was learned throughout the building,

18  her reputation was damaged for something that she was not the

19  teacher, that would be an issue of fact.

20           MS. BLOCK:  I believe, Your Honor, that was in

21  connection with the First Amendment, not the defamation claim

22  of his factual allegation.

23           THE COURT:  No, I think that is part of the

24  defamation claim.

25           MS. BLOCK:  Okay.

26

1        THE COURT:  It says that the administrators

2   accused -- who are the administrators that are referred to

3   there?

4        MR. NOVINS:  Paragraph 104, including Ciccarone.

5        THE COURT:  So who is charged with defamation?  Who

6   are you alleging defamation claims against, Ciccarone or

7   anyone else?

8        MR. NOVINS:  Whoever would be responsible for

9   putting that in the file, it was not proper, which could

10  include Houlihan being the principal because she's not the

11  teacher and that would be an improper investigation and then

12  it's defamatory for my client's reputation, going to the heart

13  and soul of her being a teacher, going to honesty and

14  integrity.

15       MS. BLOCK:  Can we be clear, Your Honor, as to

16  whether this is in the official capacity for this defamation

17  claim?

18       THE COURT:  What is the distinction?

19       MS. BLOCK:  Well, one, the defamation as against any

20  of the defendants in their individual, in their official

21  capacity would be a one year statute of limitation.  This

22  letter is a November 2013 letter at least as alleged it

23  occurred, so it is beyond the July 20th of 2014 statute of

24  limitation period -- not July.  No, July is correct.

25  Negligence is the April date.

27

1          THE COURT:  All right.  I think the question I asked

2     with regard to her age discrimination claim.  She aggrieved

3     the increased workload and that increased workload, this is

4     Linell, that increased workload continued until October,

5     correct, when she retired or when whatever happened?

6          So that would make her claims against DOE, that

7     would make her claims timely, her human rights claims timely,

8     assuming she notified DOE of the municipal liability?

9          MS. BLOCK:  Are we on Linell?

10          THE COURT:  I'm on Linell age discrimination.

11          MS. BLOCK:  Okay.

12          THE COURT:  Her continued workload which she had

13     listed as an adverse employment action continued into October

14     when she left, correct?

15          MS. BLOCK:  Actually, she alleges that it's the

16     transfer, her reassignment that was --

17          THE COURT:  I thought she also alleged her workload.

18          MS. BLOCK:  That was Edelmann that alleged --

19          THE COURT:  No.  I thought Linell alleged increased

20     workload and reduced income.  I think the City and State

21     claims were timely.

22          I am going to reserve on the defamation claims.

23          With regard to the retaliation claims, it seems like

24     she spoke, that the complaints that she made were spoken under

25     official duties so all of the statements fell within her role

28

1    as proctor.  So how do you have a retaliation claim?

2         MR. NOVINS:  The retaliation would be when she

3    called --

4         THE COURT:  But doesn't she have to be speaking --

5    for the retaliation claim to succeed, she has to be speaking

6    about a matter of public, outside her job.  Public employee

7    speech is protected from retaliation under the First

8    Amendment.  Two inquiries:  Whether she spoke as a citizen as

9    a matter of public concern and whether the relevant government

10   entity had adequate justification for treating the employee

11   differently.

12        Why is she speaking on a matter of public concern?

13        MR. NOVINS:  Well, the reason is, Your Honor,

14   plaintiff contends that the subject issue of the proctoring

15   for the exam which she got chastised about was incorrect and

16   she found out that the policy was proper and it would affect

17   not just the student that was involved at that moment, but all

18   future students, it would be a matter of public good that the

19   school was improperly having the PSAT exams administrated.

20   That would be something which she was forced to come forward

21   otherwise she would be punished.  So our contention is it

22   affects not just herself, but all students at that school for

23   testing.

24        THE COURT:  Do you want to be heard in response to

25   that?

29

1          MS. BLOCK:  I will, Your Honor, or do rather.

2          With respect to the retaliation claim, plaintiff, --

3     twofold.  One, whatever the retaliatory conduct occurred prior

4     to these statements being made so she's alleging a retaliation

5     claim that predates the alleged retaliation.  That's one.

6          THE COURT:  You mean she's alleging retaliation that

7     predated her speech?

8          MS. BLOCK:  Her speech, excuse me, yes, that

9     predates her speech.

10         THE COURT:  What is the retaliation that you are

11    alleging here?

12         MR. NOVINS:  There's comments that says that, by her

13    union person that if she doesn't explain what New York State

14    told her, she's going to have serious job consequences which

15    would be after her speech and speaking to New York State

16    regarding the actual comment.

17         THE COURT:  What did they retaliate?  After she said

18    it, how was she retaliated against?

19         MR. NOVINS:  She received a negative review and she

20    began being treated hostile.

21         MS. BLOCK:  As pled, Your Honor, the alleged

22    negative review occurred in November of 2013 and because of

23    that review, that's what prompted her to contact PSAT to

24    understand what the policies and processes were and then she

25    went and filed a grievance which is not a mechanism that you

30

1  do in a public forum but, rather, a more personal forum in

2  connection with her work at the BOE.

3        THE COURT:  Yes, the disciplinary letter occurred

4  before she made these statements.

5        MR. NOVINS:  Paragraph 136 on page 122.  The only

6  advice -- actually, I'm sorry, Your Honor.  That's with regard

7  to the other plaintiff.  I apologize.

8        Just paragraph 128, Your Honor, on page 21.  Months

9  later, Carol's new union representative attempted to intervene

10  but for Carol, her supervisor action only worsened in terms of

11  retaliation.

12        THE COURT:  But what was it?

13        MR. NOVINS:  But there's no explanation other than

14  the general comments that are pled in the complaint.

15  Basically, paragraph 127, the complaints are stop picking on

16  her, that Carol complained to the assistant principal and the

17  principal.

18        So, with an inference to 128, there's a

19  continuation.

20        THE COURT:  Well, I think perhaps the clearest

21  reason why this claim doesn't work is that, that these

22  communications and complaints she were making were clearly as

23  a part of her official duties and not as a citizen.

24        The complaint at paragraph 118, she said she

25  communicated with the college board to ascertain the policies

1    on exam protocol for students and proctors that were relevant

2    to the reprimand.  So, I think these appear to be clearly

3    within her official duties.  So on that ground, they do not

4    succeed.

5           Also, then finally, we get to the negligence claims.

6    Counsel, do you agree that these are, in effect, tort claims

7    and that the law does not permit rights violations to be

8    transmitted, transmuted into tort claims and, in any event,

9    tort claims against your employee are governed by the workers'

10   comp law?

11          I don't think you have individual negligence claims

12   here, do you?

13          MR. NOVINS:  I don't believe, Your Honor, that there

14   are any individual negligence claims.

15          THE COURT:  I meant that the negligence claims that

16   are pled, whatever they are, you agree that they are

17   appropriately dismissed?

18          MR. NOVINS:  Based on what Your Honor just said, I

19   would agree, Your Honor.

20          THE COURT:  Okay.  All right.

21          To the extent that this has been somewhat confused,

22   I will put this in an order and indicate exactly which claims

23   are dismissed and not dismissed and I will also think about

24   the arguments made with regard to the defamation claims here.

25          Thank you.

32

1          MR. NOVINS:  Thank you, Your Honor.

2          MS. BLOCK:  Thank you, Your Honor.

3          (Matter concluded.)

4

5

6

7                    *     *     *     *     *

8

9

10   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

11

12     /s/ Charleane M. Heading              June 29, 2016
     _____   _____
13        CHARLEANE M. HEADING                     DATE

14

15

16

17

18

19

20

21

22

23

24

25

CMH       OCR       RMR       CRR       FCRR