UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CAROL LINELL and CECELIA EDELMANN,

                Plaintiffs,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION; KAYE HOULIHAN, in her official and individual capacity; THOMAS OBERLE, in his official and individual capacity; and CHRISTINE CICCARONE, in her official and individual capacity,

                Defendants.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
15-CV-5085 (CBA) (MDG)

**AMON, United States District Judge:**

Plaintiffs Carol Linell and Cecelia Edelmann, two retired teachers, bring suit against the Department of Education ("DOE") and three principals at Fort Hamilton High School—Principal Kaye Houlihan, Assistant Principal Thomas Oberle, and Assistant Principal Christine Ciccarone—for defamation, retaliation, negligence, and age, disability, and sex discrimination. The defendants moved to dismiss a number of these claims pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court heard oral argument on May 3, 2016 and dismissed a number of claims for reasons stated on the record. (See Minute Entry & Order dated May 9, 2016.) The Court reserved decision, however, on defendants' motion to dismiss Linell's defamation claim. For the following reasons, the Court now grants that motion in part and denies it in part.

## BACKGROUND

Linell alleges that defendants defamed her twice.

The first incident pertains to her proctoring of the administration of the PSAT at Fort Hamilton on October 16, 2013. Linell was brought in for a disciplinary conference with Ciccarone, three other administrators, and her union representative after that test. (D.E. # 14-1 ("Am.

1

Compl.") ¶¶ 97–105.) Linell was reprimanded for failing to follow school protocol during the October PSAT exam and a January 2013 exam, an allegation she denies. (Id. ¶¶ 102, 104, 106.) Fort Hamilton issued Linell a disciplinary letter on November 15, 2013, which was placed in her personnel file. (Id. ¶ 108.) Linell believes this letter "was circulated to others for some time afterwards," at least in part because "other staff members told [her] they had seen the letter, or that she was 'the hot topic of talk at [Fort Hamilton], or said, 'nice letter, Carol.'" (Id. ¶¶ 108, 110.) Linell states this allegation negatively affected her professional reputation and would hinder her ability to find alternate teaching work. (Id. ¶ 112.)

The second incident occurred when Linell was out sick on September 9, 10, and 11, 2014. While Linell was out, Ciccarone emailed her "accusing [her] of failing to provide Substitute Lesson Plans." (Id. ¶¶ 113–114.) Again, Linell denies she failed to do this. (Id.) Linell alleges it was Ciccarone's "uniform practice and custom" to copy Houlihan on all emails and she believes Houlihan was copied on these emails. (Id. ¶ 116.)

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint must offer more than "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555, 557) (internal quotation marks omitted). In deciding a motion to dismiss, the Court accepts all well-pleaded allegations as true, construes those allegations in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor. Gonzalez v. Hasty, 802 F.3d 212, 219 (2d Cir. 2015).

2

## DISCUSSION

Defendants move to dismiss Linell's entire defamation claim as insufficiently pleaded and her defamation claim arising out of the November 2013 disciplinary letter as time barred.

### I. Sufficiency of the Defamation Allegations

"To state a claim for defamation under New York Law, the plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" Thorsen v. Sons of Norway, 996 F. Supp. 2d 143, 163 (E.D.N.Y. 2014) (quoting Thai v. Cayre Grp., Ltd., 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010)); see also Stepanov v. Dow Jones & Co., 987 N.Y.S.2d 37, 41–42 (1st Dep't 2014). "In an action for libel or slander, the particular words complained of shall be set forth in the complaint, but their application to the plaintiff may be stated generally." N.Y. C.P.L.R. § 3016(a); see also Carlson v. Geneva City Sch. Dist., 679 F. Supp. 2d 355, 371 (W.D.N.Y. 2010) ("The defamatory statements must be pleaded with some particularity."). "The central concern is that the complaint 'afford defendant sufficient notice of the communications complained of to enable him to defend himself.'" Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir. 1986) (quoting Liguori v. Alexander, 495 F. Supp. 641, 647 (S.D.N.Y. 1980)).

Defendants argue that the alleged publication of Ciccarone's email to Houlihan is protected by qualified privilege and that Linell (1) fails to identify the specific defamatory words and which defendant uttered them; (2) insufficiently pleads publication; and (3) pleads no facts of an injury sustained. (See D.E. # 22-6 ("Defs.' Mem.") at 23–25.)

The Court agrees that Ciccarone's email was protected by qualified privilege. Under New York law, qualified privilege "extends to a communication made by one person to another upon a

subject in which both have an interest." Chandok v. Klessig, 632 F.3d 803, 815 (2d Cir. 2011) (quoting Liberman v. Gelstein, 80 N.Y.2d 429, 437 (1992)). Here, Houlihan, the principal, shared a common interest in evaluating Linell's job performance. (See Defs.' Mem. at 25.) Qualified privilege may be overcome, however, by showing either actual malice—"knowledge of the statement's falsity or reckless disregard as to whether it was false"—or common-law malice, that is, spite or ill will. Id. (quoting Liberman, 80 N.Y.2d at 437–38). Plaintiffs argue that Ciccarone acted with both actual and common-law malice. (See D.E. # 19 ("Pls.' Mem.") at 23–24.) The complaint does not allege that Ciccarone copied Houlihan maliciously, however, and the Court cannot reasonably infer malice from the facts alleged. First, Linell does not allege actual malice based on Ciccarone's knowledge or knowing disregard for the truth about Linell's substitute-teacher plans. She only alleges that the school had her plans "on record in the School" "in her students' folders." (Am. Compl. ¶ 115.) This allegation alone does not allow the Court to reasonably infer that Ciccarone was "highly aware that [her statements were] probably false." Chandok, 632 F.3d at 815 (quoting Liberman, 80 N.Y.2d at 438). No allegations suggest that Ciccarone was not merely mistaken or that she simply did not know where Linell's substitute plans were or could not find them. By itself, Linell's allegation that Ciccarone was factually incorrect in her accusation does not give rise to a reasonable inference that Ciccarone knowingly and maliciously accused Linell falsely. Second, common-law malice will defeat qualified privilege "only if it was the 'one and only cause for the publication,'" id. (quoting Liberman, 80 N.Y.2d at 439), and the allegations themselves indicate that is not the case. To the contrary, Linell pleads that it was "the uniform practice and custom of Ciccarone to copy Houlihan on all e-mails . . . [including,] on information and belief, the above described e-mails." (Am. Compl. ¶ 116.) As pleaded, Ciccarone copied Houlihan not solely out of ill will or spite, but at least in part out of her

4

custom and practice to copy Houlihan on all emails. Qualified privilege therefore protects Ciccarone's publication to Houlihan, and Linell's defamation claim arising from this incident is dismissed.

Linell's defamation claim arising out of the disciplinary letter, however, may proceed. First, Linell alleges the defamatory words and who uttered them with sufficient specificity. Linell alleges that Ciccarone and Fort Hamilton High School—here represented by the DOE—issued her the November 2013 letter falsely stating that she violated testing protocol, which was published to other Fort Hamilton Staff members. (Am. Compl. ¶¶ 97–108.) These allegations plainly state "the substance of the purported communication, who made the communication, when it was made, and to whom it was communicated." Ahmed v. Gelfand, 160 F. Supp. 2d 408, 416 (E.D.N.Y. 2001). The cases defendants rely on are factually inapposite to the allegations here. In Ahmed, the complaint stated without elaboration that "false statements and accusations [were made] to Plaintiff in the presence of other employees" and "in letters to Plaintiff." Id. In Mehrhoff v. William Floyd Union Free School District, which defendants rely on primarily, the pleadings only stated that "false and injurious remarks about [the plaintiff] [were made] in writing . . . [and/or] in public." No. 04-CV-3850 (JS) (MLO), 2005 WL 2077292, at *11 (E.D.N.Y. Aug. 22, 2005). Unlike the bare allegations in those cases, the pleadings here put defendants on notice of the substance of the communication (Linell's failure to follow test protocol), who made the communication (Ciccarone and the DOE, by way of its administrators), when it was made (in November 2013 and thereafter), and to whom it was published (other Fort Hamilton staff members). The allegations are therefore sufficiently specific.

Second, Linell sufficiently alleges publication. "Under New York defamation law, 'publication is a term of art. . . . A defamatory writing is not published if it is read by no one but

5

the one defamed. Published it is, however, as soon as read by any one else.'" Albert v. Loksen, 239 F.3d 256, 269 (2d Cir. 2001) (quoting Ostrowe v. Lee, 256 N.Y. 36, 38 (1931) (Cardozo, C.J.)). Here, Linell plausibly alleges that other staff members read her disciplinary letter because they commented on it to her, (see Am. Compl. ¶¶ 108, 110). See Albert, 239 F.3d at 269 ("In New York, this [publication] rule applies even to statements made by one employee to another."). As above, these allegations are far more specific than those in Mehroff, which stated only that false statements were made to "prospective employers." 2005 WL 2077292, at *11. Unlike unidentified prospective employers, other Fort Hamilton staff members are entities well known to defendants. This allegation readily "enables [defendants] to defend [themselves]" by seeking discovery from these parties, alleviating "[t]he central concern" in defamation claims. Kelly, 806 F.2d at 46. Linell therefore sufficiently pleads publication.

Third, Linell need not plead the facts of an injury sustained. Statements disparaging someone in her profession are defamatory per se and a special injury need not be alleged. See, e.g., Celle v. Filipino Reporter Enters. Inc., 209 F.3d 163, 179 (2d Cir. 2000) ("A writing which tends to disparage a person in the way of his office, profession or trade is defamatory per se and does not require proof of special damages." (internal quotation marks and alterations omitted)); see also Liberman, 80 N.Y.2d at 435 (same). Allegations that Linell twice violated testing protocol plausibly disparage her concerning her profession.

Defendants' motion to dismiss the defamation claim arising out of the disciplinary letter as insufficiently pleaded is therefore denied.

## II. Timeliness of the Disciplinary-Letter Defamation Claim

Defendants also argue that Linell's defamation claim arising out of this incident is not timely. (Defs.' Mem. at 11.) The parties contest the appropriate statute of limitations. Defendants

argue it is one year, citing N.Y. C.P.L.R. § 215(3), which provides that actions for "libel, slander, [or] false words causing special damages" shall be commenced within one year. (See Defs.' Mem. at 10.) Plaintiffs cite N.Y. General Municipal Law § 50-i(1), which provides a one year and 90 day statute of limitations to commence tort suits against a school district. (See Pls.' Mem. at 11.)

"New York state courts have held, as a matter of state law, that 'the General Municipal Law [§ 50-i] prevails over the general statute of limitations [C.P.L.R. § 215], in respect to the limitation upon commencement of actions in tort against a public corporation.'" See Murphy v. City of Rochester, 986 F. Supp. 2d 257, 265 (W.D.N.Y. 2013) (quoting Sorge v. City of N.Y., 288 N.Y.S.2d 787, 797 (N.Y. Sup. Ct. 1968)); see also Wright v. City of Newburgh, 686 N.Y.S.2d 74, 74-75 (2d Dep't 1999) (collecting cases holding that "General Municipal Law § 50-i . . . takes precedence over the one-year period of limitations provided for in CPLR 215"). The one year and 90 day statute of limitations therefore governs Linell's claim against the school district, i.e. the DOE and the principals in their official capacities. Since General Municipal Law § 50-i only governs claims against school districts, however, Linell's claims against the principals in their individual capacities are governed by the one-year statute of limitations in C.P.L.R. § 215(3).

"[A] cause of action for defamation accrues on the date the offending material is first published." Nussenzweig v. diCorcia, 878 N.E.2d 589, 590 (N.Y. 2007); see also Kamdem-Ouaffo v. Pepsico, Inc., 160 F. Supp. 3d 553, 571–72 (S.D.N.Y. 2016) (stating that under New York Law, a defamation claim accrues on the date of the first publication). Since plaintiffs commenced this action on July 20, 2015, Linell's defamation claims are time barred if they accrued against the individual defendants prior to July 20, 2014, and against the DOE prior to April 20, 2014.

Defendants argue that claims arising from the disciplinary letter accrued "in November 2013." (Defs.' Mem. at 11.) Linell responds that the disciplinary letter could have been published

"later that school year," within the statute-of-limitations window. (Pls.' Mem. at 12.) Linell's argument would seemingly apply only to the defamation claim against the DOE, since even publication later that school year would fall outside the one-year statutory limit applicable to the claims against the individual defendants. Regardless of this argument, however, the complaint does not mention that the letter was published later that school year or, indeed, when it was published at all, except that it was published "for some time afterwards," (Am. Compl. ¶ 108). Because the date of the alleged publication is not pleaded, it is not apparent from the face of the complaint that Linell's defamation claim is untimely. Defendants' statute of limitations defense therefore cannot be decided based on the pleadings. See Thea v. Kleinhandler, 807 F.3d 492, 501 (2d Cir. 2015) ("Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." (quoting Ellul v. Congregation of Christian Bros., 774 F.3d 791, 798 n.12 (2d Cir. 2014)). The motion to dismiss the defamation claim as time barred is therefore denied.

## CONCLUSION

For the reasons stated above, Linell's defamation claim arising out of Ciccarone's email is dismissed, but defendants' motion to dismiss is denied with respect to Linell's defamation claim arising out of the November 2013 disciplinary letter.

SO ORDERED.

Dated: March 2, 2016
Brooklyn, New York

s/CBA
Carol Bagley Amon
United States District Judge

8